**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

-vs-                                                                               Case No. 6:04-cr-212-Orl-31DAB

**CARLOS VAZQUEZ**

---

**ORDER**

This matter comes before the Court on the resentencing of Defendant Carlos Vazquez ("Vazquez"), his Jurisdictional Notice/Motion for Re-Sentence Adjustment (Doc. 174), and his Sentencing Memorandum and Motion for Downward Departure and Downward Variance (Doc. 177).

**I.     Background**

Vazquez was arrested on November 4, 2004, after attempting to purchase three kilograms of cocaine from a confidential informant. (Doc. 9). He eventually pleaded guilty to one count of conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846. (Doc. 120).

On July 19, 2005, Vazquez appeared before me for sentencing. Based on the quantity of cocaine involved, Vazquez's base offense level was a 28. A two-level reduction for acceptance of responsibility put him at 26. Vazquez had three previous felony convictions on his record: two for drug offenses in 1991, and one for a sex crime – statutory rape – in 1996. His 12 criminal history points, put him in criminal history category V. Under the United States

Sentencing Guidelines (the "USSG" or the "Guidelines"), a defendant who scores out at a 26-V has an advisory imprisonment range of 110-137 months.

Under USSG § 4B1.1, however, Vazquez qualified as a career offender, which resulted in an enhancement of his offense level by six levels and increased his criminal history category to a VI. Thus, as a career offender, Vazquez scored out at a 32-VI, resulting in an advisory imprisonment range of 210-262 months.

At the sentencing hearing, I noted the huge sentence range increase that resulted from application of the Guidelines' career offender enhancement and criticized the definition it embodied as a failed attempt to come up with a rule that applied to all defendants in all circumstances, regardless of the actual offenses, their nature, or their timing. Because of my policy disagreement with the application of this Guideline, and after considering all of the 18 U.S.C. § 3553(a) factors,[1] I imposed a sentence of 110 months' imprisonment. (Doc. 120). This sentence was below the Guideline range for Vazquez as a career offender but within the range that applied but for the § 4B1.1 enhancement.

The Government appealed and, on July 18, 2007, the United States Court of Appeals for the Eleventh Circuit vacated and remanded. *United States v. Vazquez*, 240 Fed.Appx. 318 (11th Cir. 2007)(henceforth, "*Vazquez I*"). According to the Court of Appeals, the career offender provisions of Section 4B1.1 embodied a Congressional policy that drug offenders receive sentences "at or near" the statutory maximums. *Vazquez I* at 1227 (*citing United States v.*

---

[1] I also took into consideration (1) the fact that the drug transaction, though it involved a large quantity, appeared to be a one-time affair, and (2) the fact that the previous convictions occurred ten or more years ago.

-2-

*Williams*, 456 F.3d 1353 (11th Cir. 2006)). Disagreement with the enhancement therefore reflected disagreement with Congressional policy, and such a policy disagreement was an "impermissible factor" to consider in imposing a sentence. *Id.* at 323-24. Concluding that in imposing Vazquez's sentence, I was substantially affected by this impermissible factor, the Court of Appeals vacated and remanded for resentencing. *Id.* at 324.

After the remand, but before the resentencing, the United States Supreme Court issued its opinion in *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007). In *Kimbrough*, the Supreme Court emphasized the advisory nature of the Guidelines and recognized that "as a general matter courts may vary from Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines." *Id.* at 102, 128 S.Ct. at 570. *Kimbrough* partially overruled *Williams*, which the Court of Appeals had relied on in *Vazquez I*. In *Williams*, the Eleventh Circuit had determined that the Guidelines' 100-to-1 crack/powder ratio[2] also embodied a Congressional policy. *Id.* at 1368. Because of this, the *Williams* Court concluded that a sentence based in part on a belief that this ratio resulted in an excessive sentence took an impermissible factor into consideration, requiring reversal. *Id.* at 1366. In *Kimbrough*, the Supreme Court held that it was *not* an abuse of discretion for a district

---

[2] At the time of the *Williams* decision, a defendant convicted of an offense involving crack cocaine faced a longer sentence than one convicted of an offense involving the same quantity of powder cocaine. The disparity was commonly referred to as the "100-to-1 ratio," based on the relative quantities of each substance required to trigger the mandatory sentences in 21 U.S.C. § 841(b) – *e.g.*, possession of 500 grams of powder cocaine resulted in the same potential sentence as possession of 5 grams of crack cocaine. The Sentencing Commission adopted the same ratio in establishing the Drug Quantity Table in U.S.S.G. § 2D1.1, which sets the offense levels of drug crimes. *See Williams*, 456 F.3d at 1364. The Fair Sentencing Act of 2010 reduced the crack-powder disparity, but did not eliminate it.

court to conclude that the crack/powder disparity resulted in an excessive sentence, even in a mine-run case, thus overruling that aspect of *Williams*. *Kimbrough*, 552 U.S. at 110, 128 S.Ct. at 575.

As noted in *Vazquez I*, the *Williams* court had also held that a policy disagreement with the career offender enhancement of § 4B1.1 was an impermissible factor to consider in imposing a sentence. *Williams*, 456 F.3d at 1369. At first glance, the holding in *Kimbrough* suggested that this portion of *Williams* was also no longer valid – *i.e.*, that a sentencing court might properly consider a policy disagreement in imposing a sentence on a defendant, like Vazquez, who qualified as a career offender. However, the *Kimbrough* court had reached its conclusion in regard to the 100-to-1 ratio in large part because it concluded the ratio did not explicitly embody a congressional policy. *See Kimbrough*, 552 U.S. at 102-06, 128 S.Ct. at 571-73. But the *Kimbrough* court did not address the question of whether the crack/powder ratio did or did not embody a congressional policy. Mindful of *Kimbrough*, but recognizing that the career-offender enhancement was likely still immune from policy-based criticism under *Williams*, I increased Vazquez's sentence from 110 months to 180 months. (Doc. 152 at 2). In so doing, I expressly set aside my policy-based concerns about § 4B1.1. (Doc. 152 at 2).

Vazquez appealed, arguing that *Kimbrough* permitted sentencing courts to consider policy-based disagreements with § 4B1.1, and that I had erred by refusing to consider such a disagreement. On February 12, 2009, the Eleventh Circuit affirmed Vazquez's sentence, determining that *Kimbrough* had not overturned the § 4B1.1 portion of *Williams*, and that criticism of the career-offender enhancement on policy grounds was still forbidden. *United States v. Vazquez*, 558 F.3d 1224 (11th Cir. 2009) (henceforth, "*Vazquez II*").

On April 11, 2011, the Eleventh Circuit entered a curious *per curiam* order in this case, stating, in its entirety, that "Appellant's 'Motion to Expedite Ruling, Vacate Sentencing and Remand for Resentencing' is GRANTED." (Doc. 168 at 1). Attached to that order was a two-sentence order (Doc. 168 at 3) from the Supreme Court, dated January 19, 2010. *Vazquez v. United States*, – U.S. –, 130 S.Ct. 1135, 175 L.Ed.2d 968 (2010). That order read, in its entirety:

> On petition for writ of certiorari to the United States Court of Appeals for the Eleventh Circuit. Motion of petitioner for leave to proceed in forma pauperis and petition for writ of certiorari granted. Judgment vacated, and case remanded to the United States Court of Appeals for the Eleventh Circuit for further consideration in light of the position asserted by the Solicitor General in her brief for the United States filed on November 16, 2009.

The Solicitor General's brief was not attached to the order, and no explanation for the 15-month delay in returning the case was provided. In addition, the Court of Appeals did not provide any guidance as to its expectations in regard to the resentencing.

Eventually, the Court was able to obtain a copy of the brief, which had been filed by Solicitor General Elena Kagan prior to her becoming a Supreme Court justice. Having reviewed that brief, and having heard argument from counsel for both sides, the Court turns to the Defendant's resentencing in light of what appears to be the state of the law in this Circuit in regard to the career offender enhancement of § 4B1.1.

**II.    Analysis**

Before the Eleventh Circuit, the Government advanced the same arguments in the instant case that it had advanced in *Williams* regarding the career offender enhancement – i.e., that district courts are not free to disagree with the congressional policy reflected in Section 4B1.1.

Before the Supreme Court, however, the Government abandoned this position and argued that, in light of the holding in *Kimbrough*, a sentencing court is not precluded from imposing a non-Guidelines sentence based on a policy disagreement with the career offender guideline.

The *Vazquez II* court had interpreted *Kimbrough* as supporting the portion of *Williams* dealing with Section 4B1.1, rather than abrogating it, stating:

> In *Kimbrough*, the Supreme Court held that a sentencing court may consider the Guidelines' disparate treatment of crack and powder cocaine offenses as part of its consideration of § 3553(a)(6), the need to avoid sentencing disparities. *United States v. Vega-Castillo*, 540 F.3d 1235, 1238 (11th Cir.2008). The Supreme Court based its decision in part on its conclusion that Congress did not explicitly direct the Sentencing Commission to adopt Guidelines that punish crack and powder cocaine offenses according to a particular ratio. *Kimbrough*, 128 S.Ct. at 570-73. In contrast, the Court noted that "Congress has specifically required the Sentencing Commission to set Guidelines sentences for serious recidivist offenders 'at or near' the statutory maximum." *Id*. at 571 (citing 28 U.S.C. § 994(h)). It then concluded that (1) the cocaine Guidelines, "like all other Guidelines, are advisory only"; (2) "the Court of Appeals erred in holding the crack/powder disparity effectively mandatory"; and (3) district courts may consider the disparity when determining whether a within-range sentence is "greater than necessary" to serve the objectives of sentencing. *Id*. at 564.
>
> As this discussion reveals, *Kimbrough* does not gut our analysis in *Williams*. To the contrary, the Supreme Court expressly made a distinction between the Guidelines' disparate treatment of crack and powder cocaine offenses – where Congress did not direct the Sentencing Commission to create this disparity – and the Guideline's punishment of career offenders – which was explicitly directed by Congress. Because *Kimbrough* highlights this distinction, it cannot be read to create a conflict with our *Williams* decision, nor to suggest that district courts may base their sentencing decisions on any disagreement they may have with the policy behind the career offender guidelines, which are directly driven by congressional pronouncement.

*Vazquez II*, 558 F.3d at 1228.

Before the Supreme Court, the Solicitor General argued that this was an error. The passage from *Kimbrough* describing how Congress had required the Commission to set high

Guidelines for recidivists was not intended to establish (or recognize) a second category of Guidelines (*i.e.*, Guidelines that were therefore immune from criticism). Rather, the *Kimbrough* court had declined to find that the Guidelines setting forth the 100-to-1 ratio embodied a congressional policy directive, in part because the underlying statutes did not explicitly require such a ratio. *Kimbrough*, 552 U.S. at 102-03, 128 S.Ct. at 570-71. In responding to an argument that the Guidelines embodied a congressional directive that was implicit in the underlying statutes, the *Kimbrough* court stated that drawing meaning from silence was "particularly inappropriate here, for Congress has shown that it knows how to direct sentencing practices in express terms." *Kimbrough*, 552 U.S. at 103, 128 S.Ct. at 571. Section 994(h) was simply cited as an example of Congress directing sentencing practices in such terms.

But Section 994(h) was meant to direct the efforts of the Sentencing Commission. As the Solicitor General pointed out in her brief, the reference to Section 994(h) was not intended to suggest that Congress had also bound *sentencing courts* to follow the career offender Guidelines. Such a conclusion would have to rest on a faulty premise: that congressional directives to the Sentencing Commission are equally binding on the courts. *See United States v. Sanchez*, 517 F.3d 651, 663 (2d Cir. 2008) ("Section 994(h) . . . by its terms, is a direction to the Sentencing Commission, not to the courts. . . . While 21 U.S.C. § 841(b) expressly establishes the minimum and maximum prison terms that the court is allowed to impose for violations of § 841(a), there is no statutory provision instructing *the court* to sentence a career offender at or near the statutory maximum." (emphasis added)).

As the Solicitor General expressed in her brief, the notion that directives to the Sentencing Commission are equally binding on the court is fundamentally inconsistent with the

remedial scheme adopted in *Booker v. United States*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d. 621 (2005). *Booker* did not simply render certain aspects of the Guidelines advisory; instead, the court concluded that it was not "possible to leave the Guidelines as binding" in some cases and advisory in others. *Id.* at 266, 125 S.Ct. at 768. Sentencing courts are also free to disagree with the advisory Guidelines on policy grounds, subject to reasonableness review on appeal. *See Kimbrough*, 552 U.S. at 108-111. Thus, the Solicitor General concluded, the view that courts cannot disagree with the policy of the career offender guidelines – and are instead limited to making individualized variances – is at odds with both *Booker* and *Kimbrough*.

*\* \* \**

After determining that *Kimbrough* did not gut the career offender section of *Williams*, the *Vazquez II* court found that a number of other circuits shared this assessment:

> Several of our sister circuits have reached similar conclusions. In these cases, the courts were confronted with defendants that were sentenced as career offenders under Section 4B1.1, though the underlying convictions involved crack cocaine. See *United States v. Harris*, 536 F.3d 798, 812 (7th Cir.2008); *United States v. Clay*, 524 F.3d 877, 878-79 (8th Cir.2008); *United States v. Jimenez*, 512 F.3d 1, 9 (1st Cir. 2007). Yet even in these cases, the courts rejected the defendants' claims that their sentences were invalid in light of *Kimbrough*. In *Harris*, for example, the Seventh Circuit clarified that "a sentence entered under the career offender guideline, § 4B1.1, raises no *Kimbrough* problem because to the extent it treats crack cocaine differently from powder cocaine, the disparity arises from a statute, not from the advisory guidelines." 536 F.3d at 813; see also *Clay*, 524 F.3d at 878-79 ("Although the recent amendments to the sentencing guidelines lowered the offense levels associated with crack in the drug quantity table in U.S.S.G. § 2D1.1, they did not change the career offender provision in § 4B1.1."); *Jimenez*, 512 F.3d at 9 ("the decision in Kimbrough – though doubtless important for some cases – is of only academic interest [in a case arising under the career offender guideline]").

The Solicitor General argued before the Supreme Court that no other court has adopted the *Vazquez II* holding that sentencing courts are prohibited from varying from the career offender guidelines based on policy disagreements. Indeed, several courts have expressly rejected this view. *See United States v. Gray*, 577 F.3d 947, 950 (8th Cir. 2009) ("[T]he district court gave no indication that it failed to understand it authority to vary from the career-offender guideline" on the basis of "policy considerations, including disagreements with the Guidelines"); *United States v. Michael*, 576 F.3d 323, 327-28 (6th Cir. 2009) (expressly disagreeing with decision in *Vazquez II*). *See also United States v. Boardman*, 528 F.3d 86, 87 (1st Cir.2008) ("[W]e do not see why disagreement with the Commission's policy judgment (as expressed in [§ 4B1.1] ) would be any less permissible a reason to deviate than disagreement with the guideline policy judgment at issue in *Kimbrough*."). The Solicitor General also disagreed that the post-*Kimbrough* cases cited in *Vazquez II* had reached "similar conclusions" regarding criticism of the career offender guidelines, as none of those cases involved such criticism. Generally speaking, those cases involved both the career offender and the crack/powder guidelines, and the courts involved concluded that *Kimbrough*'s holding in regard to the latter did not alter the calculations under the former. *See, e.g., Harris*, 536 F.3d at 812-13 (holding that defendant's sentence under § 4B1.1 for cocaine distribution used maximum sentence permitted by statute as starting point, not crack/powder guideline ratio, and was therefore unaffected by *Kimbrough*).[3]

---

[3]The *Harris* court also expressly stated that "our discussion should not be to suggest that § 4B1.1 is any less advisory for a district judge than the other sentencing guidelines." *Id.* at 813.

\* \* \*

The pertinent holding of *Williams*– i.e., that sentencing courts cannot vary from the career offender guidelines based on policy disagreements – has not been explicitly overturned. Based on the Solicitor General's analysis, combined with this Court's own research, it appears that this holding, to the extent it was ever good law in light of *Booker*, has been overruled by *Kimbrough*. This conclusion is reinforced by recent events in this case: The Supreme Court vacated *Vazquez II*, which had held that *Kimbrough* did not overrule *Williams*. And the Eleventh Circuit, given the opportunity for "further consideration in light of the position asserted by the Solicitor General in her brief," remanded the case for resentencing rather than entering an opinion rebutting that position. Accordingly, the Court concludes that *Williams* was overruled by *Kimbrough*, and that sentencing courts in this circuit are free to disagree with the sentencing guidelines on policy grounds.

\* \* \*

Thus, it appears that the 110-month sentence I imposed six years ago was reasonable even though it was based, in part, on a policy disagreement with Section 4B1.1 of the Guidelines. Moreover, at today's hearing, the parties agreed that a 20-month reduction would be appropriate to account for the Defendant's post-sentencing rehabilitation. *See Pepper v. United States*, – U.S. –, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011). Accordingly,

the Court will enter an amended judgment, reducing the Defendant's sentence to 90 months' incarceration, to be followed by four years of supervised release.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 28, 2011.

_____
**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant
Carlos Vazquez